(No. 33321.—■■■■■■■■)

MARY C. SHEVLIN *et al.*, Appellants, *vs.* MARGARET JACKSON *et al.*, Appellees.

*Opinion filed February 16, 1955.*

BRENDAN Q. O'BRIEN, of Chicago, for appellants.

BRADEN, HALL, BARNES & Moss, and CLARK & FISHER, both of Chicago, (GEORGE S. BARNES, of counsel,) for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Daniel J. Cave, a resident of Chicago, died on May 8, 1950, leaving real estate and personal property valued at $8000. An instrument purporting to be his last will and testament was denied admission as such by the probate court of Cook County, but on appeal to the circuit court an order was entered admitting the writing as his last will and testament. His three sisters, as his only heirs-at-law, thereafter filed the present suit to contest the will in the circuit court of Cook County on the ground of mental incapacity of the testator and undue influence exercised by Margaret Jackson, the sole beneficiary named in the will. At the conclusion of plaintiffs' evidence the court granted defendants' motion for a directed verdict, and judgment

was entered on the verdict for defendants. Plaintiffs appeal directly to this court, a freehold being involved.

The principal question presented in this appeal is whether the trial court erred in sustaining appellees' motion for a directed verdict. Such motions in will contest cases are governed by the same rules which apply in actions at law. The question in such cases is whether there is any evidence in the record tending to prove the allegations of the complaint. The party resisting the motion is entitled to the benefit of all the evidence favorable to him; but if no evidence was introduced tending to prove the allegations of the complaint, or if only a bare scintilla of evidence has been adduced by the plaintiff, the court should allow the motion. (*Johnson* v. *Bennett,* 395 Ill. 389.) The issue in the case at bar, then, is whether the appellants have adduced any evidence fairly tending to prove either the alleged lack of testamentary capacity or the allegations of undue influence.

In 1948 Daniel J. Cave, an unmarried man about 60 years of age, resided alone in an apartment at 3242 Walnut Street in the city of Chicago. The building was owned by the testator. Defendant Margaret Jackson, who lived in the same neighborhood, was employed by him as a cook and housekeeper. She came to his home each day to clean the apartment, prepare his meals and do the washing. In September of that year he became ill and had a hemorrhage. A doctor was called, who prescribed medicine; and the testator remained in bed for about a week, during which time Margaret Jackson cared for him. On the morning of September 13, 1948, Carrie Jones, an acquaintance of the testator, and Eddie L. Berry, who worked for the testator doing odd jobs about the apartment building, came to his apartment. The testator prepared the instrument in question in his own handwriting, and executed it in the presence of Carrie Jones and Eddie L. Berry, who signed as witnesses. The will was written on a scrap of paper

containing a printed advertisement of a liquor distributing company, and named Margaret Jackson as the sole beneficiary. The signing took place in the kitchen of the apartment, and only the testator and the two witnesses were present.

On the question of lack of testamentary capacity plaintiffs introduced into evidence certain hospital records showing that testator was admitted to the hospital on October 12, 1948, and that he was then suffering from the effects of chronic alcoholism. Three of his tenants were called as witnesses for the plaintiffs. Charles McGavin testified that he lived in the main floor apartment of the testator's building for about five years and knew him very well; that they would drink together, and when Cave had been drinking "he was not quite the same, not crazy. When he got on a jag he would usually stay a day or two or three hours, and then he was off and was normal;" that Cave would talk to him for hours at a time about spiritualism; that his ideas "might have been a little far fetched, but he knew what it was all about." The witness further testified that Cave took care of his property, paid his taxes and utility bills, and was competent to take care of his own business during 1948; and that the witness had no opinion as to whether the testator knew what he was doing when he executed a will in the month of September, 1948.

Elizabeth McGavin testified that she talked to the testator two or three times a day during the month of September, 1948; that in 1948 he hired her husband and two laborers to make repairs on the building; that "he didn't let the building run down. He saw to it it was kept up and the bills were paid;" and that in September, 1948, Cave had sufficient mental capacity to know the objects of his bounty.

Bruno Wambaja testified that he moved into the building a few months after the testator bought it, and lived there during the six or seven years the latter owned it;

that he and his wife did janitor work there for Cave; that Cave collected the rent once a month and gave him directions about the janitor work; and that from his observations of the testator and his contacts with him in the year 1948, the testator's mental condition "seemed to be okay with me as far as I know."

Examination of the testimony of plaintiff's witnesses fails to disclose any evidence indicating that the testator did not have sufficient mental capacity to make due execution of the instrument in question or that he was subjected to undue influence by Margaret Jackson. The most that plaintiffs have shown in their effort to prove a lack of testamentary capacity is the testator's excessive use of intoxicating liquor, and the inference from the testimony of Charles McGavin that when testator was drinking his mind was not normal. There is no evidence that he was in such a condition at the time the will was executed. We cannot accept plaintiffs' argument that the misspelling of certain words in the will, and the fact that it was written on a liquor advertisement, constitute evidence of intoxication at that time. The law presumes every man to be sane until the contrary is proved, and the burden of proof rests upon the party who asserts the lack of testamentary capacity. (*Langwisch* v. *Langwisch*, 361 Ill. 632.) Such proof, to be competent, must relate to a time at or near the time of the making of the will. Evidence of mental condition at other times, unless it fairly tends to show the condition of the testator at the time the will was actually executed, is wholly inconsequential. (*Lewis* v. *Deamude*, 376 Ill. 219.) It is clear that the evidence of testator's use of intoxicating liquor is insufficient to support an opinion that he was incompetent to make a will. *Innis* v. *Mueller*, 403 Ill. 11.

None of plaintiffs' witnesses testified he was unable to transact ordinary business. The evidence in fact shows affirmatively that he possessed the capacity to do so. The rule is well settled that where a man has sufficient mental

capacity to transact ordinary business and act rationally in the ordinary affairs of life, he has sufficient mental capacity to dispose of his property by will. (See *Johnson* v. *Bennett,* 395 Ill. 389, 393.) The facts as shown by the record in the case at bar, considered with all reasonable presumptions and inferences to be drawn therefrom, have no tendency to establish the allegations of the complaint charging mental incapacity.

It is next urged that a confidential relationship existed between Margaret Jackson and the testator, and that under the facts there was a *prima facie* showing of undue influence. We can find no support in the record for such contention. The facts that testator was ill during the month in which the instrument was executed, that Margaret Jackson cared for him during the week he was confined to his bed, and that she was a close friend of one of the witnesses to the will, do not tend to show either the existence of a fiduciary relationship or the exercise of undue influence. No showing was made that she procured the execution of the will or knew anything about it being executed. She was not present when he signed the instrument, and there is nothing in the record to indicate he reposed confidence in her or was dominated by her.

Undue influence which will avoid a will must be directly connected with the execution of the will itself, must operate when the will is made, must be directed toward the procuring of the will in favor of a particular person, and be such as to destroy the freedom of the testator's action, thereby making the instrument more the result of the will and intent of another than that of the testator himself. (*Hockersmith* v. *Cox,* 407 Ill. 321; *Knudson* v. *Knudson,* 382 Ill. 492.) No inference of undue influence arises from testator's age and physical condition, or from the fact that Margaret Jackson was the sole beneficiary under the will. (*Hockersmith* v. *Cox,* 407 Ill. 321, 325-326.) We have carefully examined the evidence in the record, and find

that none of it tends in any way to show undue influence exercised over the testator.

We conclude that plaintiffs failed to adduce evidence sufficient to submit to a jury the issues in the case. In view of such conclusion it becomes unnecessary to consider the contention of defendants that the administrator with the will annexed was not sufficiently made a party to the suit.

The circuit court of Cook County properly sustained the motion for a directed verdict, and the decree is therefore affirmed.

*Decree affirmed.*